## JIM CARTER v. THE STATE.

### No. 2536.   Decided May 27, 1903.

**1.—Jury and Jury Law—Race Discrimination.**

The mere fact that the commissioners appointed to select a jury did not draw any negroes on the list is not sufficient to show that the negro race was discriminated against; and unless appellant moved to quash the list of talesmen at the proper time, he can not object to the sheriff's action in summoning talesmen on the ground of discrimination against the negro race.

**2.—Same—Special Venire—Change of Term.**

A special venire drawn for a term of court which is afterward changed by the Legislature to a different time is not thereby invalidated.

**3.—Same—Poll Tax Amendment to the Constitution.**

The amendment to section 2, article 6, of the Constitution of the State of Texas, submitted to a vote of the people by the Twenty-seventh Legislature, and adopted by the people, which makes the payment of a poll tax before the first of February of each year a necessary prerequisite to the right to vote, is self-enacting, and persons who are not qualified voters are not qualified jurors and are subject to challenge for cause.

**4.—Evidence—Threats—Res Gestae.**

Appellant's threats in connection with the act of carnal intercourse with a female under age of consent are part of the res gestae.

### ON MOTION FOR REHEARING.

**5.—Juror—Ground of Objection.**

A simple objection to a juror, without stating any ground of objection or circumstance which rendered him an unfair or impartial juror, is insufficient, and it must be shown that appellant exhausted his challenges and that some objectionable juror was thereafter forced upon him. . Following Loggins v. State, 12 Texas Crim. App., 65, and Hudson v. State, 26 Texas Crim. App., 323. Distinguishing Keaton v. State, 40 Texas Crim. Rep., 139.

**6.—Witness—Impeachment—Cross-examination.**

Even if the bill of exception had properly presented the issue, there was no reversible error in the trial court's action in not permitting appellant to prove by the prosecutrix, on cross-examination, that she was employed by her father to assist in selling beer in his store, where disorderly characters, men and lewd women, gathered to drink beer at night and to engage in lewd and disorderly conduct, and that she drank with, waited on, and associated with them on terms of equality. While such testimony may be permissible, it is not competent to impeach her credibility, and the cross-examination should have been confined to the question as to whether witness was a common prostitute, or was plying some vocation that was immoral or against the law.

Appeal from the District Court of Harris.   Tried below before Hon. J. K. P. Gillaspie.

Appeal from a conviction of rape; penalty, imprisonment in the penitentiary for a term of twenty-five years.

No statement necessary.

*J. M. Gibson,* for appellant.

*Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of rape, and his punishment assessed at confinement in the penitentiary for a term of twenty-five years; hence this appeal.

Appellant made a motion to quash the indictment on the ground that

in the formation of the special venire to try appellant, he was discriminated against on account of his race. We do not think that the testimony is sufficient to show that any discrimination was had against appellant in the formation of said jury. The mere fact that the commissioners appointed to select a jury did not draw any negroes on the list, is not sufficient to show that the negro race was discriminated against. In this connection appellant offered testimony to show that the sheriff discriminated against him in summoning talesmen, and he offered some testimony on this subject; but this is in the statement of facts, and it does not appear that he objected and filed a motion to quash said list of talesmen when they first brought into court. Before he could avail himself of the action of the sheriff, he should have made a motion, when the list of talesmen was first brought into court, to quash the same, and then have offered testimony on the subject.

Appellant also objected to the special venire, because it had been drawn by the jury commissioners for another term of the court, it appearing that the term of court had been changed by the Legislature after the commissioners were appointed. It does not occur to us that there is anything in this objection.

When the jury was being impaneled, J. E. Foster, who had been summoned as a special venireman, was called. On his voir dire examination, it was shown that he had not paid his poll tax for the year 1902, this case being tried on March 23, 1903. Appellant challenged this juror as not being qualified, inasmuch as he was not authorized to vote under the Constitution and laws of this State. The court overruled this challenge, and appellant challenged him peremptorily. The same course was pursued with reference to two other jurors, to wit, J. J. Barlow and Paul Floeck. After this, and when eleven jurors had been selected and sworn in said case, Y. W. McNeal was brought forward and tested as to his qualifications, and was shown to be a qualified juror, and was accepted by the State. At this time defendant had already exhausted his fifteen peremptory challenges, and he then requested the court, in view of the fact that he had been compelled to challenge peremptorily three jurors, who had stated on their voir dire that they had not paid the State and county poll tax due for the year 1902, prior to the first day of February, 1903, that defendant be allowed to challenge peremptorily said Y. W. McNeal, which request was by the court overruled, and said juror ordered sworn to try the cause, which completed the panel. Defendant excepted to the action of the court with reference to not allowing him to challenge for cause said other three jurors who showed that they had not paid their poll tax; and also excepted to the action of the court refusing to extend his challenges so that he might challenge the juror McNeal. This brings before us for construction the recent constitutional amendment, commonly called, "the poll tax amendment to the Constitution," which was adopted at the last general election, and by its terms is made self-enacting, without the necessity of further legislation. Article 673 Code Crim. Proc., makes the fact that one is not a qualified voter in the

State and county under the Constitution and laws of this State a cause for challenge. The amendment to the Constitution above referred to makes the payment of a poll tax before the 1st of February of each year a necessary prerequisite to the right to vote. Consequently when the three jurors before mentioned were presented to appellant, they were shown not to be qualified voters, and accordingly were not qualified jurors; and this fact constitutes a ground of challenge for cause. The action of the court deprived appellant of this right, and the juror Mc-Neal was forced upon defendant without his consent. We hold that under the circumstances that it was not competent for the court to deprive appellant of his peremptory challenges. Keaton v. State, 40 Texas Crim. Rep., 139.

Appellant excepted to the State proving that he threatened prosecutrix, in connection with the act of carnal intercourse with her. This was a part of the res gestae, and pertinent evidence, notwithstanding she was under the age of consent.

Appellant also objected to the refusal of the court to permit him to prove that prosecutrix was employed by her father to assist in selling beer in his store, where disorderly characters, men and lewd women, gathered to drink beer at night, and to engage in lewd and disorderly conduct; and that prosecutrix associated with them and drank beer with them and waited on them in the wineroom, associating with them on terms of social equality. This evidence was offered for the purpose of attacking her credibility as a witness. This question has been before this court in a number of cases, and the authorities are not altogether reconcilable. However, we think the rule deducible from them is to the effect that, on cross-examination, a witness may be asked as to her or his vocation, environments and associations; but not for the purpose of laying a predicate for contradiction; the party so interrogating on cross-examination must be satisfied with the answer of the witness. See authorities discussed in McCray v. State, 38 Texas Crim. Rep., 609. In this particular case we believe it was competent to interrogate the witness as to her occupation and associations. Of course, this matter is in the sound discretion of the court, and details will not be permitted.

Appellant has assigned other errors, but it is not necessary to discuss them. The judgment is reversed and the cause remanded.

## OPINION ON REHEARING.

HENDERSON, JUDGE.—The State has made a motion for rehearing, and contends that the court is in error in the original opinion, in regard to the formation of the jury which tried appellant. We held that the jurors Foster, Barlow and Floeck were not qualified jurors because they had not paid their poll tax; and we further held that inasmuch as appellant was forced to challenge these jurors, and so exhausted his peremptory challenges, the court erred in forcing the juror McNeal on appellant, on his objection urged to said juror. On the first proposition

we adhere to our original holding. Our attention was not specially drawn to the shape in which this bill presented the question as to the juror McNeal. Appellant assigned no cause or objection as to this juror; simply objected to him. So far as this record is concerned, as shown by this bill, McNeal was a qualified juror and no fact or circumstance was shown, as to him, which suggested that he was not absolutely fair and impartial. In the motion for rehearing our attention is drawn to the fact that appellant simply objected to this juror without stating any ground of objection or any circumstance which rendered him an unfair or partial juror; and a long line of authorities is cited in support of the proposition, beginning with Loggins' case, 12 Texas Crim. App., 65, and coming down to the present time, to the effect that, before a case will be reversed because of some improper action of the court in overruling a challenge to some particular juror, it must be shown appellant exhausted his challenges, and that some objectionable juror was thereafter forced upon defendant. In Hudson's case 28 Texas Crim. App., 323, an objectionable juror was said to be one against whom some cause for challenge exists, such as would likely effect his competency, or his impartiality in the trial; and these authorities are reconcilable with Keaton v. State, 40 Texas Crim. Rep., 139, for there at least three jurors who had formed opinions, and as to whom it was proposed to prove the opinions so formed were against appellant, sat in the case over his objection. This is what we understand to be meant by an objectionable juror; that is, one against whom some ground or cause, such as the formation of opinion, or some prejudice, which might be ground of challenge, and would tend to show that the juror was not absolutely fair and impartial. But in this particular case no such ground was assigned. The juror was merely objected to. Upon such showing we hold, in accordance with the unbroken line of authority, that the court did not commit any error in the formation of said jury, and in refusing to stand the juror McNeal aside, no ground of objection being urged as to him which suggested that he was not a fair and impartial juror. We did not discuss this question before, but, as stated, our attention was directed simply to the qualifications of the jurors on account of their failure to pay the poll tax.

The State further claims that this court was in error in intimating, in the original opinion; that the court had erred in not permitting him to prove by the prosecutrix on cross-examination that she was employed by her father to assist in selling beer in his store, where disorderly characters, men and lewd women, gathered to drink beer at night, and to engage in lewd and disorderly conduct; and that the prosecutrix associated with them and drank beer with them and waited on them in the wineroom, associating with them on terms of equality. The State calls our attention to the bill of exceptions, and how this question was presented. We agree with this contention; that is, the bill does not show what the answer of the witness would have been. It merely states that defendant stated the object of the testimony was to show certain facts

45 Crim.—28.

stated above, and for the purpose of attacking her credibility as a witness. A bill of exceptions should show definitely what the answer of the witness would have been. Duffey v. State, 55 S. W. Rep., 176. Appellant says that the object and purpose of this testimony was to attack her credibility; that is, to impeach her. While as stated in the original opinion, it may be permissible to show in the discretion of the court, the surroundings and environments of a witness, as her occupation, etc., yet if these were not matters that would go to her credibility as showing that she was plying some vocation that was immoral or against the law, involving moral turpitude, the exclusion of testimony short of this would not afford reversible error. While the court might have admitted the testimony here complained of, if the bill had been in proper shape, still its exclusion would not be reversible error. The authorities on this point, as we are advised, go to the extent of holding that the witness may be asked on cross-examination if she is a common prostitute, but as to this the examination must stop and she can not be impeached or her answer introduced in the negative. The effect of this testimony, if it had been admitted, would have been merely to show that the father of prosecutrix kept the house where the beer was sold, and men and women, some of bad character, gathered there to drink beer at night; and that she associated and drank beer with them in the wineroom. This was not testimony of a character to impeach or discredit her. It was her father's business; and he had a right to command her services. As stated, even if the bill had properly presented the question, there was no reversible error in rejecting it.

There are no other questions presented in the record that require discussion. In accordance with the views above expressed, the motion for rehearing is granted, and the judgment is affirmed.

*Motion granted; affirmed.*