JIMMIE BENSON v. THE STATE.

No. 7701.  Decided October 3, 1923.

1.—Transporting Liquor—Agency—Words and Phrases.

The term transport is not defined by the statute, but in common language it embraces the conveyance from one place, locality or country to another, and where appellant and another acted together in conveying the pint of whisky in question from the drug store to the room of the purchaser in the hotel, and the same was for an illegal purpose, and not as an accommodation, the offense was made out against the appellant.

2.—Same—Indictment—Precedent.

Where the indictment charged that defendant did then and there unlawfully transport liquor capable of producing intoxication, the same was sufficient. Following Tucker v. State, 94 Texas Crim. 505, 251 S. W. Rep., 1090.

3.—Jury and Jury Law—Ku Klux Klan—Voir Dire—Peremptory Challenges.

Where the ruling of the court, in sustaining an objection to appellant's asking the veniremen if he was a member of the ku klux klan, abridged the right of the defendant given under the statute to interrogate the veniremen and to elicit from them facts which would facilitate the exercise of peremptory challenge in an intelligent manner, the same was reversible error, although the recital in part of the bill of exceptions was insufficient, but did contain a direct averment that the venire was prejudiced by reason of the ku klux organization. Following Reich v. State, 94 Texas Crim. Rep., 449, 251 S. W. Rep., 1073.

**4.—Same—Peremptory—Challenge—Jury and Jury Law—Rule Stated.**

The statute confers upon one accused of a felony the right of exercising ten peremptory challenges without assigning any reason therefor, and if the privilege thus conferred is arbitrarily denied, the right to a fair trial is abridged, and such right includes the privilege of having the jurors sworn on their voir dire, and subjecting them to such examination as will enable the party to exercise the right intelligently. Following Kerley v. State, 89 Texas Crim. Rep., 201.

**5.—Same—Evidence—Bill of Exceptions.**

In the absence of an averment of fact authenticated by the trial judge, the bill complaining of the rejection by the court of evidence that the ku klux klan had conspired with another to induce defendant to violate the law cannot be considered on appeal. Following Fuller v. State, 50 Texas Crim. Rep., 14.

Appeal from the District Court of Palo Pinto. Tried below before the Honorable J. B. Keith.

Appeal from a conviction of transporting intoxicating liquor; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*Moyers & Creighton* for the appellant.

*W. A. Keeling,* Attorney General, and *C. L. Stone,* Assistant Attorney General, for the State. On question of indictment, Nantz v. State, 94 Texas Crim. Rep., 283.

On question of definition of transport, Brown v. State, 92 Texas Crim. Rep., 147.

MORROW, Presiding Judge.—Conviction is for the unlawful transportation of intoxicating liquor; punishment fixed at confinement in the penitentiary for a period of three years.

The evidence shows that J. W. Massey was employed to detect and cause the arrest of persons violating the laws prohibiting the traffic of intoxicating liquors. Massey was a citizen of Fort Worth, Tarrant County, Texas. He entered into an engagement with the Sheriff of Palo Pinto County and became a guest in a certain hotel in Mineral Wells. He requested the appellant, who was a negro porter at the hotel, to procure some whisky and handed him a five-dollar bill for that purpose. Appellant later delivered to Massey at the hotel a pint of whisky. The whisky was procured at a certain drug store several blocks distant from the hotel by Woodall, who it seems was another employee at the hotel. Appellant directed Woodall to go to the drug store and procure the whisky, which he did and paid three dollars for it. On his return to the hotel, he delivered the whisky to appellant, also the two dollars. Appellant retained $1.75 and gave Woodall twenty-five cents. Appellant carried the whisky from the point at

which it was delivered to him by Woodall to the room of Massey and there delivered it to Massey, but gave Massey no change.

Appellant insists that the transaction reveals that he was merely the agent of Massey, the purchaser, and is guilty of no violation of the law. The position is deemed unsound.

The term "transport" is not defined by the statute, but in common language it embraces the "conveyance from one place, locality or country to another." Cyc. of Law & Proc., Vol. 38, p. 946.

Appellant and Woodall acted together in conveying the pint of whisky in question from the drug store to the room of the purchaser, Massey, in the hotel. Appellant denied that he retained any of the money given him by Massey. There was evidence supporting the jury's finding to the contrary. According to the State's evidence, appellant's connection with the intoxicating liquor was illegal; his conveyance of it was for an illegal purpose—that of sale. He was not an accommodation actor but received compensation for what he did. The acts of Woodall were chargeable to the appellant, both being principals.

The indictment charged that appellant did "then and there unlawfully transport liquor capable of producing intoxication." This court has held such an indictment good. See Tucker v. State, 94 Texas Crim. Rep., 505, 251 S. W. Rep. 1090. The views there expressed are adhered to.

In the formation of the jury appellant asked the venireman Harris if he was a member of the organization known as the Ku Klux Klan. Objection to this inquiry was interposed and the objection sustained. Exception was reserved thereto. It was held in the recent case of Reich v. State, 94 Texas Crim. Rep. 449, 251 S. W. Rep. 1073, that, under the facts before the court, such an inquiry should have been permitted for the purpose of enabling the appellant to intelligently exercise his peremptory challenges. In that case the facts, authenticated by the trial judge, showed that appellant and his counsel believed that persons on the panel were members of the Ku Klux Klan and that that organization had interested itself and its membership in the conviction of persons charged with crime, and that it was feared that such members, if any as were upon the jury and who were members of the organization mentioned were, by reason of the facts stated, prejudiced jurors. In the case in hand, the court, in qualifying the bill, declines to certify to the recited facts. A large portion of the bill is but a recital of the reasons given by appellant for excepting to the ruling of the court. Such a recital has been uniformly held an insufficient basis upon which to secure the review by this court. See Fuller v. State, 50 Texas Crim. Rep., 14; Bigham v. State, 76 Texas Crim. Rep. 453; Hamlin v. State, 39 Texas Crim. Rep. 579; McKinney v. State, 41 Texas Crim. Rep. 434; Burt v.

State, 38 Texas Crim. Rep. 397; Benson v. State, 69 S. W. Rep. 165; Douglas v. State, 58 Texas Crim. Rep. 125; Conger v. State, 63 Texas Crim. Rep. 327; Overby v. State, 92 Texas Crim. Rep. 172; Vernon's .Tex. Crim. Stat., Vol. 2, p. 745, subdivision 38. The bill, however, contains a direct averment that by the examination, appellant would have been able to show that some of the jurors were members of the organization mentioned, and that such jurors were prejudiced by instructions given them by the organization to qualify as jurors to convict. the appellant. The qualification that the court does not certify to all of the facts does not, in the light of the approval of the bill, controvert the fact that counsel, in making his objection, stated as facts the matters mentioned. In qualifying the bill, the jurors stated that "they belonged to no secret organization whose obligation would in any way interfere with or influence them against the appellant." This qualification we think does not meet the complaint of the appellant that he, through his counsel, was forbidden to interrogate the veniremen so that upon facts given by them he could determine upon the exercise of his peremptory challenge. The statement imputed to the jurors by the court that it was but their conclusion that the obligation of the organization to which they might belong would not interfere with their impartiality as jurors. It is believed that the ruling abridged the right of the appellant given by the statute to interrogate the veniremen and elicit from them facts which would facilitate the exercise of peremptory challenge in an intelligent manner. This subject has been discussed at some length in the recent case of Reich v. State, supra, and authorities there cited.

The statute confers upon one accused of a felony the right of exercising ten peremptory challenges. A peremptory challenge, as defined by statute, "is one made to a juror without assigning any reason therefor." If the privilege thus conferred is arbitrarily denied, the right to a fair trial is abridged. See Kerley v. State, 89 Texas Crim. Rep., 199; Ruling Case Law, Vol. 16, p. 253, and other authorities cited in the Kerley case, supra. The right to exercise peremptory challenges would be empty if one might be arbitrarily denied the privilege of examination upon *voir dire*. Such an examination is accorded in this and in all jurisdictions of which we are aware. Cyc. of Law & Proc., Vol. 24, pp. 351 and 352. In the text it is said:

". . . but the right of peremptory challenge within the number allowed by law is absolute and cannot be abridged or impaired by any arbitrary rule of court as to the mode of impaneling a jury." (See Lewis v. U. S., 146 U. S. 370, 36 Law Ed. 1011.)

It is also said in the text that the right includes the privilege of "having the jurors sworn on their *voir dire* and subjecting them to such examination as will enable the party to exercise the right intelligently." As applied to a peremptory challenge, any juror tendered

whom the accused desires to challenge is objectionable within the meaning of the law. See Kerley v. State, 89 Texas Crim. Rep. 201, from which we quote:

"In conferring it the law gives effect to the natural impulse to eliminate from the jury list not only persons who are rendered incompetent for some of the disqualifying causes named in the statute but persons who, by reason of politics, religion, environment, association or appearance, or by reason of the want of information with reference to them, the accused may object to their service upon the jury to which the disposition of his life or liberty is submitted. In other words, the law fixes the number of challenges and confers upon the accused the right to arbitrarily exercise them."

The bill of exceptions complaining of the rejection by the court of independent evidence to the effect that members of the Ku Klux Klan had conspired with Massey and paid him money to induce appellant to violate the law does not show error in that it contains no averments of facts authenticated by the trial judge, but consists merely of the reasons given by the appellant for objecting to the ruling. The case of Fuller v. State, 50 Texas Crim. Rep. 14, and other cases cited above support the conclusion here stated.

In view of the verdict of conviction, the punishment assessed being two years in excess of the minimum, and because of the error of the court in unduly restricting appellant's rights to examine the veniremen upon their *voir dire*, we feel constrained to order a reversal of the judgment. Such is the order.

*Reversed and remanded.*