## J. C. WOLFE V. THE STATE.

No. 22620. Delivered January 5, 1944.
Rehearing Granted March 1, 1944.

BEAUCHAMP, Judge, dissenting on original opinion.

HAWKINS, Presiding Judge, dissenting on motion for rehearing.

The opinion states the case.

*Kelley & Looney, R. J. Enochs, L. Hamilton Lowe,* all of Edinburg, and *E. A. McDaniel,* of McAllen, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

HAWKINS, Presiding Judge.

Appellant was convicted of driving while intoxicated upon a public road, it being also alleged that he had theretofore been convicted of a misdemeanor offense previously committed of driving while intoxicated upon a public road. Punishment was assessed at one year in the penitentiary.

Prosecution was under Arts. 801 and 802b P. C., as amended by the 47th Legislature, Ch. 507, page 819.

The evidence amply supports the conviction. We see no necessity of reciting it. The previous conviction of "drunken driving" was upon a plea of guilty by appellant.

Appellant appears to rely largely upon bill of exception number four as presenting error calling for reversal of the judgment. The bill recites that one F. P. Archer was on the jury panel, and that appellant challenged him for cause because he was a member of the grand jury which returned the indictment against appellant. After Archer had stated that he had forgotten any evidence heard in the grand jury room, and had no

opinion as to appellant's guilt, the court overruled the challenge for cause. The bill then proceeds as follows:

"After the challenge for cause had been overruled and the defendant excepted, as shown, the defendant exhausted all his peremptory challenges, using one on Juror F. P. Archer, who was so challenged for cause. Defendant now states that there were several jurors he considered objectionable and upon whom he would have used peremptory challenges had he been permitted to do so, one of whom was Ralph Hughes, who served on the jury and who would have been stricken by the defendant (if defendant) had been allowed an additional challenge by the sustaining of his challenge for cause to the juror Archer, but there being no grounds for disqualification of the juror Hughes which the defendant could establish before the Court, he was forced to take him in preference to some others whom he considered worse."

In overruling the challenge for cause against the juror Archer the trial court seems to have confused the "disqualification" of a juror with the "grounds of challenge for cause." Sec. 7 of Art. 616 C. C. P. specifically provides one ground for such challenge for cause as "That he served on the grand jury which found the indictment." Mitchell v. State, 116 Tex. Cr. R. 65, 27 S. W. (2d) 800. The court should have sustained the challenge for cause against the juror Archer.

Looking to the remainder of the bill, it is noted that as to the juror Hughes it is only recited that he was an "objectionable" juror, without setting out any reasons why he was so characterized. No facts are stated which would advise this court that Hughes might have been in some sense an unfair, prejudiced, or biased juror, though not to the extent as would furnish a predicate for a challenge for cause.

We copy the first and second paragraphs on page 280 of Branch's Ann. Tex. P. C.:

"Even if it is shown that the peremptory challenges were exhausted, the bill of exceptions is not sufficient if it is merely recited therein that an objectionable juror was forced on defendant and there is a failure to show what facts made him objectionable."

"It is not enough that the bill of exceptions recites that an objectionable juror sat on the case, but it must show wherein such juror was objectionable or what facts tended to prevent him from being a fair and impartial juror."

Perhaps the leading case upon the point involved is Hudson v. State, 28 Tex. Cr. App. 338, 13 S. W. 388. Other cases cited by the State upon the bill being insufficient are: Prewitt v. State, 167 S. W. (2d) 194; Carter v. State, 45 Tex. Cr. 430, 76 S. W. 437; Rippey v. State, 14 S. W. 448; Galan v. State, 177 S. W. 124; Jones v. State, 64 S. W. (2d) 789.

An examination of Shepard's S. W. Rep. citations reveals that Hudson's case has been cited with approval and followed some twenty-one times on the question of formation of juries, not always upon the exact point now before us, but whenever such precise point was involved the holding in Hudson's case has never been departed from. In Carter v. State, 45 Tex. Cr. R. 430, 76 S. W. 437, the question arose almost precisely as we find it in the present case. In the opinion on rehearing, the subject is again discussed, Hudson's case (supra), cited and followed. In Johnson v. State, 108 Tex. Cr. R. 499, 1 S. W. 896, the court was again dealing with the exact question now before us, and a similar bill of exception held not to present error. This holding was followed in Grille v. State, 20 S. W. (2d) 424. The precise question was also before the court in Saffel v. State, 121 Tex. Cr. R. 444, 449, 51 S. W. (2d) 393, and a bill of exception such as here found held to show no error. To the same effect is Murphy v. State, 139 Tex. Cr. R. 552, 141 S. W. (2d) 634. The last time the question was before this court was in Prewitt v. State, 167 S. W. (2d) 194. The question was there presented just as in the bill now being considered, and the bill held insufficient to present error.

Some general expressions in the opinion by Judge Morrow in Kerley v. State, 89 Tex. Cr. R. 201, 230 S. W. 164, may be thought to sustain the bill in the present case. In the opinion on rehearing in Saffel's case, 121 Tex. Cr. R. 444, 51 S. W. (2d) 393, it is pointed out that the question discussed in Kerley's case was entirely different from the one here present, and that Judge Morrow in the Johnson case, 108 Tex. Cr. R. 499, 1 S. W. (2d) 896, followed precisely the holding in Hudson's case on the point now before us.

To sustain appellant's contention that his bill of exception number four exhibits reversible error would call for overruling either directly or in effect the many cases holding to the contrary.

By bill of exception number eleven, appellant complains that the State was permitted to cross-examine his wife on matters

not inquired about on her direct examination and which were not germane thereto. Tom Mayfield was one of the officers who arrested appellant on the occasion which formed the basis of the present prosecution. Appellant had testified that Mayfield had said he was going to send appellant to the penitentiary. On rebuttal, Mayfield testified that he had never made such a statement to anybody. Appellant then called his wife, who testified on direct examination that some three weeks before the present trial, Mr. Mayfield was at her house and that she asked him: "If he was not doing wrong in what he was doing and he said 'no, I am doing everything in my power to send him (meaning defendant) to the penitentiary'." It is apparent that the development of the matter only to the point at which appellant sought to leave it was vague and uncertain. On cross-examination the State elicited from the wife the circumstances under which the officer was at her house, resulting in appellant's arrest. The inquiry by the State appears germane to the wife's evidence on direct examination. As qualified by the court, the bill of exception presents no error.

The court authorized the jury to convict appellant if he drove upon the highway "while intoxicated or while under the influence of intoxicating liquor." The complaint is that being submitted in the disjunctive, it was confusing and led the jury to believe there was a difference between being "intoxicated" and being "under the influence of intoxicating liquor." Bills of exception numbers 12, 13, 14, and 15 present objections to the court's charge as so submitted and complain of the refusal of a special instruction requested by appellant, which would have told the jury that "under the law the terms 'intoxicated' and 'under the influence of intoxicating liquor' mean one and the same thing." We think the court had already in his main charge instructed the jury to the same effect in the following language:

"You are further charged that a person is deemed to be 'intoxicated' or 'under the influence of intoxicating liquor,' within the meaning of the law, when he does not have the normal use of his physical and mental faculties by reason of the use of intoxicating liquor."

Thus explaining the terms used, we discover no reversible error in the court's instruction, or in refusing the requested charge.

Bill of exception number sixteen brings forward complaint of the argument of the prosecuting attorney as follows:

"It is an unfortunate situation for Mr. Wolfe and for Mrs. Wolfe and for those children.

"They have been here in the courtroom before you and they have been brought in here by this man who has let them down and is being tried for his liberty; he has let his own family down, and has brought them into the courtroom for the effect it may have upon the jury."

The argument was objected to upon the ground that there was no evidence that the children were brought into the courtroom for any purpose except to take care of them while the father was on trial. The court instructed the jury not to consider the argument, notwithstanding which appellant excepted. Counsel for the State then said: "I am not trying to force any opinion upon you (jury). I am stating my opinion." There seems to have been no objection to the latter remark. In view of the court's instruction, the bill appears not to present reversible error.

We find in the record eighteen bills of exception. All those briefed by appellant have been discussed. All the others have been examined and are not thought to present error.

The judgment is affirmed.

BEAUCHAMP, Judge (Dissenting).

Being convinced that my associates are correct in saying that the court committed error in refusing to sustain appellant's challenge for cause to the juror Archer, I am unable to agree that such an error was harmless and that the case should be affirmed. The result of the court's ruling in this case was that appellant was denied his statutory right to ten peremptory challenges. By the same process, the court could have overruled perfectly legal objections to two, and even ten, jurors and thereby to have forced appellant to exercise his ten challenges on men who were not qualified jurors at all. This would have left him without the privilege of eliminating obnoxious jurors, men who had no particular legal disqualification and yet whose business, religious or political alignments, or known personal likes and dislikes, association with parties adversely interested, or even personal appearances, might have made them undesirable in that particular case. Peremptory challenges allowed by the statute are accorded a party on trial to insure him against embarrassment and uncertainties arising from the

presence on a jury panel of qualified jurors under the law, who may be thus related to him. The privilege goes further, and permits the elimination of a juror about whom the party knows nothing. It is a right to arbitrarily eliminate from the jury to try him ten men in felony cases less than capital and fifteen in capital cases, without assigning any reason therefor. The effect of the majority holding in this case, admittedly supported by many decisions of this court, may destroy the right of peremptory challenges entirely. If it destroys only one, as it did in the instant case, then the party on trial must face a jury selected contrary to the sacred provisions of our criminal procedure. In this statement, I am not without support in the decisions of this court.

I am unable to distinguish the question presented here from that which worked a reversal in Mitchell v. State, 27 S. W. (2d) 800. One Dove was on the jury panel. On voir dire examination, he called attention to the fact that he was probably on the grand jury returning the indictment. The court examined the jury list and, failing to find his name there, overruled the challenge to him. An examination of the record in that case shows that the bill of exception did not bring forward reasons further than that the court committed error in overruling the challenge. Yet this court reversed the case, solely on the ground that the court committed error in failing to sustain that challenge. My associates correctly state, and the State's brief in the instant case concedes, that the same error was made in the case at bar. Yet the conclusion is reached that it should be affirmed because appellant was forced to take an objectionable juror and his bill fails to state just what that objection was. As I understand the holding, it is that unless appellant showed the juror they were forced to take to be in some manner disqualified by law to serve, the error became harmless. Such theory is now, and has always been, contrary to and defeats the very purpose in the enactment of a law giving the party ten peremptory challenges. If he can show a good reason for objecting to a juror, it becomes the duty of the court to excuse such juror.

The citations from Mr. Branch's very valuable work have no further force than to bring forward the result of the holdings of this court and present no argument whatsoever in favor of them. It is interesting to note that in Branch's P. C., page 277, Sec. 537, there is a discussion of what is meant by a peremptory challenge. He says: "A peremptory challenge is made to a juror without assigning any reason therefor." It is a right to reject a juror who is not subject to some legal objection that

would eliminate him. Heskew v. State, 17 T. C. A. 165; Edmonson v. State, 44 S. W. 154; Hill v. State, 10 T. C. A. 618; Wade v. State, 12 T. C. A. 358; Monk v. State, 27 T. C. A. 457, 11 S. W. 460; Riddles v. State, 46 S. W. 1060; Benson v. State, 254 S. W. 793; Norman v. State, 52 S. W. (2d) 1051.

Again, Judge Morrow, in a very similar case to that now before us, has said in Benson v. State, 254 S. W. 793:

"The statute confers upon one accused of a felony the right of exercising ten peremptory challenges. A peremptory challenge as defined by statute, 'is one made to a juror without assigning any reason therefor.' If the privilege thus conferred is arbitrarily denied, the right to a fair trial is abridged. See Kerley v. State, 89 Tex. Cr. R. 199, 230 S. W. 163; 16 Ruling Case Law, p. 253, and other authorities cited in the Kerley case, supra. * * * See Lewis v. U. S., 146 U. S. 370, 13 Sup. Ct. 136, 36 L. Ed. 1011. * * * As applied to a peremptory challenge, any juror tendered, whom the accused desires to challenge, is objectionable, within the meaning of the law. See Kerley v. State, 89 Tex. Cr. R. 201, 230 S. W. 164, from which we quote:

" 'In conferring it, the law gives effect to the natural impulse to eliminate from the jury list not only persons who are rendered incompetent for some of the disqualifying causes named in the statute, but persons who, by reason of politics, religion, environment, association, or appearance, or by reason of the want of information with reference to them, the accused may object to their service upon the jury to which the disposition of his life or liberty is submitted. In other words, the law fixes the number of challenges and confers upon the accused the right to arbitrarily exercise them.' "

It appears, then, from the majority opinion and those cited to support it, that when the court has erroneously failed to sustain a challenge for cause to a juror, it becomes incumbent upon the complaining party to go further and show injury. That is the holding of the majority in the instant case. On the other hand, if the party does the best he can, makes an effort to eliminate the juror thus forced upon him, he assumes the burden of showing his injury, to a very unusual degree. If he does not eliminate the juror by the use of one of his peremptory challenges and permits the disqualified juror to serve, the case should be reversed. At least, such is the logical conclusion from a consideration of the Mitchell case, supra. The two lines of decisions are in conflict and ought to be harmonized. The only right way to do this is to follow what the Legislature says, and secure to

the party on trial his right to the legal number of *peremptory* challenges, in the full and accepted meaning of that word.

We must not overlook the fact that when a party is called before the bar of justice he has had no part in the selection of the men who compose the panel from which his jury is to be selected. He has a legal right to the elimination from such panel of every disqualified juror and he has the further right to challenge the specified number without assigning any reason therefor. This was not accorded appellant in the case now before us. He was forced to eliminate a disqualified juror by the use of one of his peremptory challenges and, having exhausted his ten challenges, to accept another who was objectionable to him. It is sufficient that he was merely obnoxious, or even that he did not know anything about him. Because he was defeated in such right, it is my opinion that this case should be reversed. The fact that it would overrule any number of the previous decisions of this court is immaterial. If they are wrong, they ought to be overruled, and it has been the policy of this court always to change any ruling whenever it appears from a presentation of the question that the former rulings are erroneous.

I respectfully record my dissent.

### ON MOTION FOR REHEARING.

GRAVES, Judge.

In the original submission hereof Presiding Judge Hawkins and the writer were in accord relative to an affirmance of this cause, Judge Beauchamp dissenting. Upon a more mature reflection, I am of the opinion that appellant's bill of exceptions No. 4 presents reversible error, and I shall attempt to give my reasons for such belief.

It is shown that one F. P. Archer was presented as a possible juror on the venire to try this cause. It was there developed that Mr. Archer was a member of the grand jury which had returned this indictment against appellant. When such fact was made known, appellant challenged such juror for cause, offering such as a disqualification of the juror to sit in this trial. The trial judge, after an examination of the juror, overruled such challenge for cause, and appellant exercised one of his peremptory challenges on Mr. Archer. In the progress of the jury selection appellant exercised all of his further peremptory challenges, and in his bill alleges that he was forced to

take, among others, one juror Ralph Hughes, who was an objectionable juror to appellant, and upon whom he would have exercised a peremptory challenge had he possessed same, and had he not have been compelled to improperly exercise a peremptory challenge on Mr. Archer.

In the original opinion herein we held that this bill was insufficient in that same should have gone further and shown wherein and why Mr. Hughes was an objectionable juror, in that such bill should have shown him to be an unfair and impartial juror before appellant would have been entitled to a reversal of his case because of this overruling of the challenge for cause of the juror Archer.

It is true that beginning with the early decisions of this court there has been a general movement toward the doctrine laid down in this original opinion until the same came into full strength in the case of Hudson v. State, 28 Tex. Cr. App. 338, 13 S. W. 388, as quoted in the original opinion. However the Hudson case does not furnish a clear parallel to the instant case, nor do I think the holding is as strong as it is thought to be in the original opinion. It merely says:

"It was error to refuse to stand that juror aside, but the error becomes harmless in view of the fact that the juror did not sit upon the case, the defendant having rid himself of him by a peremptory challenge, and no objectionable juror having sat upon the case."

Not so in the present case, for it is shown that Mr. Hughes sat upon this case, and he was objectionable to appellant, and the only reason he did thus sit was because of the trial court's error in refusing the challenge for cause to Mr. Archer. That the juror was susceptible to the challenge for cause is admitted in the original opinion, citing Mitchell v. State, supra. Therefore if the trial court had not overruled such proper challenge, appellant would have been in possession of his tenth peremptory challenge, which he could have used upon Mr. Hughes, without giving any reason therefor, save that he did not desire him. The word peremptory means absolute, conclusive, final, positive, not admitting of question or appeal. Webster's International Dictionary.

We think the line of decisions following the Hudson case, supra, have gone to such an extent in defining an objectionable juror as one subject to a challenge for cause. In the case of

Carter v. State, 45 Tex. Cr. R. 433, 76 S. W. 437, it is said that in Hudson's case, supra, "An objectionable juror was said to be one against whom some cause for challenge exists, such as would likely affect his competency, or his impartiality in the trial," and it was therein held that it was appellant's duty to show such before an error would be found. We think if a juror was not fair and impartial, such would be a disqualification in itself, and good grounds for challenge for cause, and we think same is provided for under Art. 616, C. C. P. If such be true, then the doctrine should necessarily follow that an objectionable juror could not be reached with a peremptory challenge, but that in order to show a reversible error in improperly allowing an accused only nine peremptory challenges, the person desired to be the recipient of the tenth peremptory challenge should be a proper subject for a successful challenge for cause, thus being susceptible to being challenged on two proper grounds.

If one of an accused's peremptory challenges could be taken from him, why not five be taken, and if five, then why not ten, leaving none, and all jurors be acceptable save unfair and partial ones.

We are constrained to agree with the reasoning in the case of Kerley v. State, 89 Tex. Cr. R. 199, 230 S. W. 163, and think that Judge Morrow laid down the proper reasoning therein when he further said, in addition to the quotation set forth in the dissenting opinion:

" * * * This right having been denied the appellant in the instant case, he having exercised all of the challenges the court would permit him to use, and having been forced to try his case before jurors who were objectionable and whom he sought to challenge peremptorily, the verdict of conviction rendered by the jury so selected cannot, we think, with due respect to the law, be held to reflect the result of a fair trial by an impartial jury, which it is the design of our law shall be given to those accused of crime."

This case was cited generally with approval in the case of Viley v. State, 244 S. W. 542, upon the doctrine that an accused charged with a special offense can not be relegated to only ten peremptory challenges by a waiver of the death penalty by the State, there being no discussion, however, of the above quoted excerpts from the opinion in Kerley v. State, supra.

It is also observed that the writer of the opinion in the case of Kerley v. State, supra, at a later date wrote the opinion in

Johnson v. State, 108 Tex. Cr. R. 499, 1 S. W. (2d) 896, in which he followed the Hudson case, supra, without mention of Kerley's case. We think of the two conflicting opinions the one of first impression followed the better reason. Art. 614, C. C. P. reads as follows:

"A peremptory challenge is made to a juror without assigning any reason therefor."

We do not think that such a challenge contemplates a showing of bias or prejudice upon a juror's part. It was a peremptory challenge which was wrongfully taken from appellant, and not one for cause.

Again, the Kerley's case, supra, is mentioned with approval in the opinion in Bennett v. State, 261 S. W. 1036, relative to the office of a peremptory challenge. Our Brethren of the civil courts have not adopted in full the severity of the Hudson case, supra, and others following it, in that it was held in Preston v. Ohio Oil Co., 121 S. W. (2d) 1043, that when a litigant was improperly deprived of one of his six peremptory challenges, it was "error of a nature reasonably calculated to prejudice a legal right of the plaintiffs, and therefore in the absence of a showing by the record, beyond a reasonable doubt, that it was harmless, will be presumed to have been prejudicial. * * * The action of the court in overruling a challenge to a juror in a particular case whose disqualification is under the undisputed facts declared by law must be deemed material, we think, in that it is reasonably calculated to deprive the challenging party of the legal right to six peremptory challenges, by being forced to use one of them upon the challenged juror." In this Civil Appeals case writ of error was refused by the Supreme Court.

This principle seems to have been adopted as sound in M. K. & T. R. R. v. Hannig, 91 Texas 347, 43 S. W. 508; Bell v. Blackwell, 283 S. W. 765, (Com. App.), as well as being the prevailing rule in many of our sister states, to which we are cited, as well as that of the Supreme Court of the United States, among them being Lewis v. United States, 146 U. S. 370, 36 L. Ed. 1011-1014, from which we quote:

"The right of challenge comes from the common law with the trial by jury itself, and has always been held essential to the fairness of trial by jury. As was said by Blackstone, and repeated by Mr. Justice Story: 'In criminal cases, or at least in capital ones, there is, in favorem vitae, allowed to the prisoner an arbitrary and capricious species of challenge to a certain

number of jurors, without showing any cause at all, which is called a "peremptory challenge;" a provision full of that tenderness and humanity to prisoners, for which our English laws are justly famous. This is grounded on two reasons: 1. As every one must be sensible, what sudden impressions and unaccountable prejudices we are apt to conceive upon the bare looks and gestures of another; and how necessary it is that a prisoner (when put to defend his life) should have a good opinion of his jury, the want of which might totally disconcert him, the law wills not that he should be tried by any one man against whom he has conceived a prejudice, even without being able to assign a reason for such his dislike. 2. Because, upon challenges for cause shown, if the reasons assigned prove insufficient to set aside the juror, perhaps the bare questioning his indifference may sometimes provoke a resentment; to prevent all ill consequences from which, the prisoner is still at liberty, if he pleases, peremptorily to set him aside.' 4 Bl. Com. 353; United States v. Marchant, 4 Mason, 160, 162, 25 U. S. 480, 12. Wheat. 480, 482 (6 L. Ed. 700). See also Co. Lit. 156 b; Termes de la Ley, voc. Challenge, 2 Hawk, chap. 43, Sec. 4; Reg. v. Frost, 9 Car. & P. 129, 137; Hartzell v. Com. 40 Pa. 462, 466; State v. Price, 10 Rich. L. 351, 357."

We recognize the reluctance with which one in a judicial position should approach a line of decisions of long standing with the purpose of setting aside the doctrine therein laid down, some grey with antiquity, and the doctrine of stare decisis should bear heavily on retaining the integrity of such decisions. However upon a conviction of the inequitable nature of such line of decisions, and their unfairness to one accused of an offense, one's duty should be plain to correct the same at a presented opportunity. Thus thinking, the line of decisions herein discussed, as illustrated by the Hudson case, supra, and those following it, as well as those preceding it, the same are overruled, and the doctrine here laid down that in the trial of a criminal case where an accused has been wrongfully deprived of a peremptory challenge by being forced to use such upon a juror who was shown to be subject to a challenge for cause, and such accused has exhausted his peremptory challenges, and a further juror be presented whom he states to be objectionable to him, then it will not be necessary for accused to show in what manner such further juror was objectionable to him, nor to show that such juror was an unfair or partial juror. In further words, we think the accused should only be required to exercise a peremptory challenge on the objectionable juror and not a challenge for cause, nor show grounds for a challenge for cause, nor to show why such juror was objectionable to him.

.. 

The writer recognizes the fact that he agreed in the original affirmance of this cause, under the rule in Hudson's case, supra, but upon mature study he believes he was wrong in thus perpetuating that doctrine, and takes this opportunity in receding from such position and deciding this cause in a manner that comports with his ideas of what the law should be, as well as that which is right and wrong.

Thus believing, the appellant's motion for a rehearing is granted, the judgment of affirmance is set aside, and the judgment is now reversed and the cause remanded.

HAWKINS, Presiding Judge (dissenting).

My brethren have reached the conclusion that appellant's motion for rehearing should be granted. My views upon the point at issue are expressed in the original opinion affirming the judgment, and they remain unchanged. It follows that in my judgment the motion for rehearing should be overruled.

Accordingly, I register my dissent to granting the motion with reference to the original opinion for my reasons.