

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-23-00021-CR

Curtis Wayne **SHANNON**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 12, Bexar County, Texas
Trial Court No. 540376
Honorable Yolanda T. Huff, Judge Presiding

Opinion by:     Luz Elena D. Chapa, Justice

Sitting:        Luz Elena D. Chapa, Justice
                Beth Watkins, Justice
                Liza A. Rodriguez, Justice

Delivered and Filed: August 28, 2024

AFFIRMED AS REFORMED

Appellant Curtis Wayne Shannon was convicted by a jury of driving while intoxicated (DWI). He argues (1) the trial court erred by denying his motion to suppress because the officer had neither reasonable suspicion nor probable cause to stop him, (2) the trial court erred by denying his request to strike a veniremember for cause, and (3) the evidence was legally insufficient to support his conviction. We reform the judgment and affirm as reformed.

**BACKGROUND**

On March 21, 2017, San Antonio Police Department (SAPD) Officer Emanuel Peralta was stopped at a traffic light at an intersection in San Antonio. His vehicle was in the right lane of the three-lane stop light. Shannon's vehicle was stopped at the same traffic light, up front in the center lane, ahead of Officer Peralta's vehicle. Officer Peralta noticed Shannon's vehicle was stopped one car-length away from the white stop bar. When the traffic light turned green, Officer Peralta passed Shannon's vehicle and saw Shannon using a cell phone. After passing through the intersection and looking in his rearview mirror, Officer Peralta observed Shannon's vehicle still idle at the intersection, impeding traffic. Officer Peralta turned on his emergency lights and made two U-turns to pull his patrol unit behind Shannon's vehicle.

At that point, Officer Peralta exited his vehicle and approached Shannon's vehicle. In doing so, he smelled alcohol and noticed a wet spot located on the groin area of Shannon's pants. Shannon also had a disheveled appearance and slurred speech. Officer Peralta instructed Shannon to drive to the nearest parking lot, where he continued his investigation in a safer location away from traffic. Once parked, Shannon voluntarily opened the driver's door and exited his vehicle. Officer Peralta then conducted three field sobriety tests. He arrested Shannon after Shannon failed the third field sobriety test.

A jury found Shannon guilty, and the trial court sentenced him to six months in jail, probated for one (1) year, and assessed a $500 fine. This appeal followed.

**ANALYSIS**

*Motion to Suppress*

Shannon argues the trial court erred by denying his motion to suppress because Officer Peralta had neither reasonable suspicion nor probable cause for the traffic stop.

**A. Standard of Review**

When reviewing a trial court's ruling on a motion to suppress, we apply a bifurcated standard of review. *See State v. Espinosa*, 666 S.W.3d 659, 667 (Tex. Crim. App. 2023); *Ramirez-Tamayo v. State*, 537 S.W.3d 29, 35 (Tex. Crim. App. 2017). "We afford almost complete deference to the trial court's determination of historical facts, especially when those determinations are based on assessments of credibility and demeanor." *Ramirez-Tamayo*, 537 S.W.3d at 35. However, we review de novo "the legal significance of the facts as found by the trial court, including whether a particular set of facts is sufficient to give rise to reasonable suspicion." *Id.* When, as here, the trial court does not enter findings of fact, we "must view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record." *Id.* at 35–36 (quoting *Harrison v. State*, 205 S.W.3d 549, 552 (Tex. Crim. App. 2006)) (internal quotation marks omitted). "[T]he trial court's ruling must be upheld if it is reasonably supported by the record and is correct under a theory of law applicable to the case." *Espinosa*, 666 S.W.3d at 667 (citing *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996)). A trial court's ruling should be "reversed only if it is arbitrary, unreasonable, or 'outside the zone of reasonable disagreement.'" *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014).

**B. Applicable Law**

The Fourth Amendment to the United States Constitution guarantees protection against unreasonable searches and seizures. U.S. CONST. amend. IV; *Ramirez-Tamayo*, 537 S.W.3d at 36. This constitutional protection extends to warrantless traffic stops, and as a result, a traffic stop must be "supported by reasonable suspicion." *State v. Hardin*, 664 S.W.3d 867, 872 (Tex. Crim. App. 2022); *see Ramirez-Tamayo*, 537 S.W.3d at 36. If an officer has reasonable suspicion that a

driver has committed a traffic violation, the officer may conduct a traffic stop. *Hardin*, 664 S.W.3d at 872.

Reasonable suspicion for a traffic stop exists "if the officer has 'specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaged in criminal activity.'" *Jaganathan v. State*, 479 S.W.3d 244, 247 (Tex. Crim. App. 2015); *see Ramirez-Tamayo*, 537 S.W.3d at 36. A police officer must not rely on his subjective intent as a basis for detaining an individual; instead, he must have "an objectively justifiable basis for the detention." *Ramirez-Tamayo*, 537 S.W.3d at 36 (quoting *Wade v. State*, 422 S.W.3d 551, 558 (Tex. Crim. App. 2013)). Nevertheless, the reviewing court may "take into account an officer's ability to draw on [his] own experience and specialized training to make inferences from and deductions about the cumulative information available to [him] that might elude an untrained person." *Id*. at 35 (alterations in original) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)) (internal quotation marks omitted). "A reviewing court must give 'due weight' to factual inferences drawn by local judges and law enforcement officers." *Id*. at 36 (quoting *Ornelas v. United States*, 517 U.S. 690, 699 (1996)). We review a reasonable suspicion determination by considering the totality of the circumstances. *Id*. "When a police officer stops a defendant without a warrant, the State has the burden of proving the reasonableness of the stop at a suppression hearing." *State v. Colby*, 604 S.W.3d 232, 237 (Tex. App.—Austin 2020, no pet.) (quoting *State v. Cortez*, 543 S.W.3d 198, 204 (Tex. Crim. App. 2018)).

## C. Application

During the motion to suppress hearing, Officer Peralta testified he first noticed Shannon when he was stopped at the red light at an intersection. He testified Shannon was stopped in front of him at the red light, and he "noticed that he was a little too far from the [stop]light." He further

testified when the light turned green, he passed Shannon, who was holding a cell phone up to his ear. He testified as he drove through the intersection, he looked back in his rearview mirror and saw Shannon remained stopped at the intersection. He testified Shannon "was impeding traffic" while "on his cell phone at the time" in violation of traffic laws. He therefore made two U-turns and pulled his patrol unit behind Shannon's vehicle. He stated he was essentially conducting a traffic stop to determine why Shannon was on his cell phone and impeding traffic.

When reviewing these facts under a totality of the circumstances, we conclude Officer Peralta had a particularized and objective basis for suspecting Shannon committed a traffic violation. *See Ramirez-Tamayo*, 537 S.W.3d at 36; *Jaganathan*, 479 S.W.3d at 247. Specifically, he witnessed Shannon using his cell phone held up to his ear while operating his vehicle and impeding traffic. As such, he provided specific articulable facts, when combined with rational inferences, leading him to reasonably believe Shannon had engaged in a traffic violation. *See Ramirez-Tamayo*, 537 S.W.3d at 36. To the extent Shannon contends Officer Peralta admitted he did not have reasonable suspicion to conduct the stop, the record does not support this contention. Instead, the record shows Officer Peralta testified as to facts establishing reasonable suspicion. Moreover, we do not consider an officer's subjective intent when determining whether reasonable suspicion exists. *See id.* Accordingly, because Officer Peralta had an objectively justifiable basis to stop Shannon, we conclude the trial court did not err in denying his motion to suppress.

### *Challenge For Cause*

Shannon argues the trial court improperly denied his request to strike Veniremember 13 for cause because Veniremember 13 expressed bias toward DWI offenses. As a result, Shannon was forced to use one of his peremptory strikes. In response, the State contends Shannon failed to preserve this complaint for appeal, and alternatively, the trial court did not abuse its discretion because Veniremember 13 testified she could be "fair and impartial and follow the law."

**A. Standard of Review**

"The standard of review on appeal is whether the trial court abused its discretion when it overruled a challenge for cause." *Buntion v. State*, 482 S.W.3d 58, 84 (Tex. Crim. App. 2016). In making this determination, we review the challenged veniremember's voir dire in its entirety to determine whether the record shows a veniremember's bias would affect her ability to serve on the jury and abide to the oath. *See id*. We afford great deference to the trial court's ruling because the trial judge is present to evaluate the potential juror's statements and disposition. *See, e.g.*, *Hudson v. State*, 620 S.W.3d 726, 731 (Tex. Crim. App. 2021); *Buntion*, 482 S.W.3d at 84; *Gardner v. State*, 306 S.W.3d 274, 296–97 (Tex. Crim. App. 2009). "Particular deference is due when the prospective juror's answers are vacillating, unclear, or contradictory." *Buntion*, 482 S.W.3d at 84. We will reverse the trial court's ruling on a challenge for cause only if there has been a clear abuse of discretion. *Gardner*, 306 S.W.3d at 296.

**B. Harm**

We begin by addressing the State's contention Shannon failed to preserve this complaint for appeal. "Th[is] issue, however, is one of harm, not preservation." *Comeaux v. State*, 445 S.W.3d 745, 747 (Tex. Crim. App. 2014); *see Hudson*, 620 S.W.3d at 729 (considering first whether appellant has shown how trial court's denial of his challenge for cause harmed him). *Johnson v. State*, 43 S.W.3d 1, 5 n.6 (Tex. Crim. App. 2001) ("In the past we have confused preservation of error and harm issues within the context of an erroneous denial of a challenge for cause[,]" and steps courts have stated were required to preserve error are really to show harm). We therefore must first determine whether Shannon has established harm by the trial court's ruling. *See Hudson*, 620 S.W.3d at 729.

To show harm for an erroneous denial of a challenge for cause, *Comeaux*, 445 S.W.3d at 749, the defendant must make the following assertions on the record: (1) he raised a clear and

specific challenge for cause against the potential juror, (2) he used a peremptory challenge in response to the denial of the challenge for cause, (3) he exhausted his peremptory challenges, (4) he was denied additional peremptory strikes, and (5) an objectionable juror sat on the jury. *Hudson*, 620 S.W.3d at 730. These requisites allow the trial judge "every opportunity to correct [the] error and to allow the defendant to demonstrate that he did not have the benefit of using his peremptory challenges in the way that he desired." *Comeaux*, 445 S.W.3d at 750. The purpose of these five steps "is to demonstrate that the defendant suffered a detriment from the loss of a peremptory strike." *Id.* at 749. "When the trial judge denies a valid challenge for cause, forcing the defendant to use a peremptory strike on a panel member who should have been removed, the defendant is harmed if he would have used that peremptory strike on another objectionable juror." *Id.* at 750.

A review of Veniremember 13's voir dire shows during her individual questioning, Shannon asserted a clear and specific challenge for cause against her for bias, and the trial judge denied it. *See Hudson*, 620 S.W.3d at 730. The record does not show whether Shannon exercised his peremptory strike on Veniremember 13; nevertheless, the parties agree Shannon exercised a peremptory strike on Veniremember 13.[1] However, there is nothing in the record showing Shannon exhausted all his remaining peremptory strikes or was denied additional peremptory strikes. Additionally, Veniremember 13 did not serve on the jury, and nowhere in his brief does Shannon state an objectionable juror sat on the jury because he was forced to use a peremptory strike on Veniremember 13. *See id.*; *Comeaux*, 445 S.W.3d at 750. We therefore conclude Shannon has

---

[1] The record does not show when Shannon exercised his peremptory strike on Veniremember 13, but the parties agree Shannon exercised a strike to prevent Veniremember 13 from sitting on the jury.

failed to demonstrate he suffered any detriment from the loss of a peremptory strike. *See Comeaux*, 445 S.W.3d at 750.

### C. Applicable Law and Application

Even if we assume Shannon satisfied the preliminary steps for showing harm, the trial court did not abuse its discretion in denying his challenge for cause. In examining a challenge for cause, we consider a veniremember challengeable when she has "bias or prejudice against the defendant or the law on which the State or the defendant is entitled to rely." *Hudson*, 620 S.W.3d at 731 (citing TEX. CODE CRIM. PROC. art 35.16 (a)(9)). The test is whether the veniremember's "bias or prejudice would substantially impair the prospective juror's ability to carry out [her] oath and follow instructions in accordance with the law." *Id*. (quoting *Tracy v. State,* 597 S.W.3d 502, 512 (Tex. Crim. App. 2020)). Before excusing a juror for a challenge for cause, "the law must be explained to [her] and [she] must be asked whether [she] can follow the law regardless of [her] personal views." *Id*. The challenger bears the burden to prove the challenge for cause is proper. *Tracy*, 597 S.W.3d at 512. The burden is satisfied once the challenger has demonstrated the veniremember understood the law and "could not overcome his prejudice well enough to follow the law." *Id*.

Here, during defense counsel's questioning, Veniremember 13 stated her brother had once suffered injuries in an accident caused by a DWI driver. She stated, "I may have a strong belief about someone who's driving intoxicated." When asked by defense counsel if she felt her brother's accident would have an impact on her if she were selected to serve on the jury, she stated, "I would probably have to look at the whole picture and see the evidence to make an informed decision." After further questioning, she stated, "I don't really know if it might affect me or not, so I'm in doubt I will say."

The prosecutor then asked Veniremember 13 if she could listen to all the facts and evidence and be fair and impartial considering her experience. She stated, "Yeah." The prosecutor again asked whether she could make a decision "even with that experience with your brother." She stated, "I will—I will say maybe . . . . I don't know if that will come back to me, so . . . ." Thereafter, the prosecutor specifically asked: "Can you be a fair and impartial juror on a DWI case, having had that experience?" She responded, "Yes."

Defense counsel followed up by asking, "But you also said that it could affect your judgment, what happened to your brother, that situation. If that surfaces, while you're listening to the testimony could that affect your judgment?" At that point, Veniremember 13 clarified, "I will say now that you are explaining and asking again, I will say no."

When viewing Veniremember 13's voir dire in its entirety, we recognize Veniremember 13 wavered in her answers. She began by stating she was unsure if her experience concerning her brother would affect her decision, but she also stated she could be a fair and impartial juror when considering all the facts and evidence. To the extent Veniremember 13's answers were vacillating, unclear, and contradictory throughout questioning, we must give complete deference to the trial court's decision. *See Buntion*, 482 S.W.3d at 84. We therefore conclude the trial court could have determined Veniremember 13 did not have bias or prejudice that would substantially impair her ability to carry out her oath and follow instructions in accordance with the law. *See id*. As a result, the trial court did not abuse its discretion by denying Shannon's challenge for cause.

***Sufficiency of the Evidence***

In his final issue, Shannon challenges the sufficiency of the evidence to support his conviction.[2]

## A. Standard of Review

In reviewing the sufficiency of the evidence, "reviewing courts consider the evidence in the light most favorable to the verdict and determine whether, based on the evidence and reasonable inferences therefrom, a rational juror could have found that the State has proven the essential elements of the crime beyond a reasonable doubt." *Baltimore v. State*, 689 S.W.3d 331, 341 (Tex. Crim. App. 2024). "This standard gives full responsibility to the trier of fact to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* "Reviewing courts measure sufficiency by comparing the evidence produced at trial to the essential elements of the offense as defined by the hypothetically correct jury charge." *Id*. The trier of fact makes determinations of fact through their "common sense, common knowledge, personal experience, and observations from life." *Id*. at 342. We may not substitute our judgment for the jury's judgment by "re-evaluating the weight and credibility of the evidence." *Id*. "An appellate court cannot act as a thirteenth juror and make its own assessment of the evidence." *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018). Rather, our "role on appeal is restricted to guarding against the rare occurrence when the factfinder does not act rationally." *Id.*

---

[2] *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (providing that when appellant argues legal and factual sufficiency, we need only address legal sufficiency of the evidence).

**B. Applicable Law**

A person is driving while intoxicated if the person is intoxicated while operating a motor vehicle in a public place. TEX. PENAL CODE § 49.04(a). "'Intoxicated' means: (A) not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body" or "(B) having an alcohol concentration of 0.08 or more." TEX. PENAL CODE § 49.01 (2)(A), (2)(B).

The State bears "the burden of persuading the fact-finder that the defendant is guilty of the offense beyond a reasonable doubt." *Baltimore*, 689 S.W.3d at 340. To help meet its burden, the State can rely on testimony from an experienced law enforcement officer who "had on numerous occasions observed persons under the influence of alcoholic beverages." *Annis v. State*, 578 S.W.2d 406, 407 (Tex. Crim. App. 1979); *see, e.g.*, *Baltimore*, 689 S.W.3d at 344; *Jackson v. State*, 468 S.W.3d 189, 193 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

**C. Application**

Here, Officer Peralta testified he had been a peace officer for twenty-five years, and he worked on the department's DWI task force for the past thirteen years. He testified he smelled alcohol when he first approached Shannon's vehicle and observed Shannon's slurred speech. Shannon admitted to drinking a "couple of beers" that night. Additionally, Officer Peralta testified Shannon's pants had a wet spot on his groin area. During the investigation, the wet spot grew, signifying Shannon had urinated on himself. As Shannon stepped out of his vehicle, he staggered and had a noticeable front-to-back sway. Officer Peralta further testified he observed Shannon fumbling through his wallet to locate his identification, and his hand motions were slow. Moreover, Officer Peralta testified Shannon failed three field sobriety tests: the Horizontal Gaze Nystagmus (HGN) test, the walk-and-turn test, and the one-leg stand test. Officer Peralta was unable to

properly perform the last test because Shannon did not lift his foot off the ground; he only raised his toes. Officer Peralta further testified he concluded Shannon was intoxicated after attempting to administer the third field sobriety test and by relying on his experience of conducting over 4,000 DWI investigations. He therefore discontinued his DWI investigation. The jury also watched Officer Peralta's dashcam video, which supported his testimony. When considering Officer Peralta's testimony and the dashcam video in the light most favorable to the verdict as well as the reasonable inferences drawn therefrom, we conclude a rational trier of fact could have found Shannon guilty beyond a reasonable doubt of DWI. *See Annis*, 578 S.W.2d at 407; *see also Baltimore*, 689 S.W.3d at 340; *Jackson*, 468 S.W.3d at 193. We therefore conclude the evidence was sufficient to support his conviction for DWI.[3]

## CONCLUSION

The judgment of conviction is affirmed as reformed.

Luz Elena D. Chapa, Justice

Do Not Publish

---

[3] Shannon was charged by information with the Class A misdemeanor offense of DWI with an alcohol concentration level of 0.15 or more, and the State waived the 0.15 portion of the information at trial, making the offense a Class B misdemeanor. *See* TEX. PENAL CODE § 49.04(a), (b), (d); *see also Rodriguez v. State*, 675 S.W.3d 54, 56 (Tex. App.—San Antonio 2023, no pet.) (discussing difference between DWI as Class B misdemeanor and DWI with BAC level of 0.15 or greater as a Class A misdemeanor). The record, including the evidence and the jury charge, shows Shannon was convicted and sentenced for DWI only as a Class B misdemeanor. However, the trial court entered a judgment of conviction reflecting Shannon was convicted of the Class A misdemeanor "DWI w/ BAC 0.15 or higher," and as concluded above, the evidence was sufficient to convict Shannon of DWI only as a Class B misdemeanor. *See Thornton v. State*, 425 S.W.3d 289, 299–300 (Tex. Crim. App. 2014) (providing for reformation court must determine jury necessarily found every element necessary to convict appellant of lesser-included offense and determine whether evidence sufficient to support conviction of appellant for lesser-included offense). We therefore reform the trial court's judgment to delete all references to "DWI w/ BAC 0.15 or higher" and to reflect a conviction for DWI under section 49.04(a) and (b). *See id*. at 297 (providing courts of appeal have authority to reform judgment).